## BOYETT v. UNITED STATES.
### No. 8182.

Circuit Court of Appeals, Fifth Circuit.

Oct. 29, 1936.

Paul Blanchard and Roy S. Levinson, both of Columbus, Ga., for appellant.

Keith L. Seegmiller, Atty., Department of Justice, of Washington, D. C., T. Hoyt Davis, U. S. Atty., and A. Edward Smith, Asst. U. S. Atty., both of Macon, Ga., and Slaton Clemmons, Atty., Department of Justice, of Atlanta, Ga.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

This is an action against the United States by the administratrix of Robert Douglas Holton for disability benefits accruing during his life and also for the face amount of the policy as a death claim. It involves a policy of converted insurance issued July 12, 1927, and modified August 1, 1933. Premiums were payable monthly, and the allegations are that Holton did not pay· that due March 1, 1934, or any subsequent ones, but that he had become totally and permanently disabled beginning Jan. 24, 1934, and so continued till his death Feb. 8, 1935. According to the petition, he made no proofs of his disability, but his

administratrix, who was not appointed until July 9, 1935, filed proofs with the Veterans' Administration on July 13, 1935. Her claim was rejected Sept. 18, 1935, on the ground that "the evidence was not sufficient to establish as a fact that the insured was permanently and totally disabled at the time alleged or at any time while insurance was in force." The Director had previously written the claimant: "The insurance in this case was permitted to lapse for the nonpayment of the premium due March 1st, 1934, and to present the case properly before the Council it will be necessary to allege that the veteran became permanently and totally disabled *not later than March 31, 1934.*" These letters are alleged to be a binding construction of the policy, establishing that it does not require payment of premiums which accrue after total and permanent disability. A demurrer, however, asserted that since *no proofs* of disability were alleged to have been submitted before the final lapse date of March 31, 1934, no cause of action was set forth, and this demurrer was sustained, and the petition was dismissed.

The policy provisions here important are (italics ours):

"$10,000. This insurance is granted in consideration of and subject to the terms and conditions hereinafter set forth, and in further consideration of the payment of the monthly premium of $7.50 on the first day of each month. * * * This insurance is payable in monthly instalments of $57.50 *in the event of the total permanent disability of the insured or of his death.* * * * *Upon due proof* of the total permanent disability of the insured *while this policy is in force* the monthly instalments shall, except as hereinafter provided, be payable to the insured and continue to be so payable during total permanent disability so long as he lives, and *payment of all premiums due after receipt of such proof* during total permanent disability shall be waived. *Upon due proof* of the death of the insured *while this policy is in force* the monthly instalments, without interest, which have accrued since the death of the insured * * * shall be paid to the beneficiary designated, (the insured's estate) * * * until 240 instalments in all, including any paid to the insured during his lifetime on account of total permanent disability, shall have been paid.

"1. Premiums are due and payable monthly in advance. * * * If any premium be not paid when due, this policy shall cease and become void except as hereinafter provided.

"2. For the payment of any premium under this policy a grace of thirty-one days without interest will be allowed during which time the policy will remain in force. * * *

"11. * * * The total and permanent disability benefits *may relate back* to a date not exceeding *six months prior to the receipt of due proof* of such total and permanent disability, and any premiums paid after receipt of due proof or total permanent disability and within six months shall be refunded without interest."

 Due proof of disability can by clear language be made a condition of obligation. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416; Egan v. New York Life Ins. Co. (C.C.A.) 67 F.(2d) 899; Avery v. New York Life Ins. Co. (C.C.A.) 67 F.(2d) 442. It would afford certainty and ease to the Veterans' Administration if the rule were established that a converted policy will lapse, if the insured neither pays his premium nor submits proof of his disability before the grace period expires. Some of the expressions quoted from this policy are capable of that construction, but to find the true meaning all must be considered together and in the light of the statutes providing for the insurance. The rule that an ambiguity is to be resolved in favor of the insured applies to a policy issued by the United States, for, as in other cases of insurance, the writing is prepared and proposed by the insurer on which he takes the insured's money, and it ought not to be given any doubtful or unreasonable meaning to defeat the protection offered. An established administrative construction, while not conclusive, is entitled to great weight. Touching this last point, we must hold the letters of the Director concerning this claim insufficient to establish an administrative construction, for, while they clearly show that it was supposed by him that a total disability proven to exist before the expiration of the grace period would prevent a lapse of the policy, they are but the decision in this case. However, the brief filed for the United States informs us that so far back as August 16, 1921, the counsel for the Veterans' Bureau gave a formal opinion to that effect on the con-

verted policy of Milton Louis Diver, and that this opinion has been acted upon ever since until challenged in the present suit. This policy was issued nearly six years after that opinion and decision, and might well be considered as intended to be governed by it.

But, irrespective of that, we think the opinion well considered and sound. The second sentence above quoted from the policy states broadly and without qualification that the insurance is payable in the event of total and permanent disability or death of the insured. The next quoted provision, *"Upon due proof* of the total permanent disability of the insured while this policy is in force the monthly instalments shall be payable," may be understood in two ways: First, that due proof of disability must be made while the policy is in force; or, second, that due proof of a disability which occurred while the policy was in force is a prerequisite of payment. There is thus an ambiguity, but it is fairly resolved by the use of the same form of words in the next sentence: "Upon due proof *of the death* of the insured while this policy is in force." No one would doubt that death while the policy was in force and not proof of it within that time was intended. The insured might die but a few minutes or hours before the lapse of the policy, and his disability might so occur, and in either case under circumstances such that immediate preparation and presentation of proofs would be impossible. The fair construction is that hitherto followed that the death or disability must happen while the policy is in force, but the proof of it may be made in a reasonable time afterwards. Disability or death during the life of the policy is a condition of liability, but proof of it at some later time is only a prerequisite of payment. Payment waits on due proof, but matured obligation to pay does not. Total permanent disability, which is as much insured against as death, occurring while the policy is in force, matures the obligation of the policy for the whole 240 monthly instalments if the disability is not relieved. It dispenses during its continuance with the payment of further premiums for carrying the risk. The disability like the death must occur while the policy is in force, but proof of it is not required to be made before the next premium would otherwise have been due nor within the grace period. The birth

of the insurer's obligation to pay is the death of the obligation of the insured. This has been the judicial construction of the term insurance certificates, and is the rule hitherto observed by the Veterans' Administration for converted insurance, and we see no sufficient reason to overturn it. The language "and payment of all premiums due after receipt of such proof during total permanent disability shall be waived" is again ambiguous, because the words "after receipt of such proof" may attach themselves to the word "due" or the words "shall be waived"; but, even if understood in the first sense, the provision is gratuitous. There is no need of a waiver of premiums which become due after total and permanent disability exists, for none will be owing. Paragraph 11 deals with a delay in making the proof of total and permanent disability, and lays down no limit of time, but provides that payments will not be made to relate back for more than six months. Whether this means that instalments for months prior to the six are to be forfeited or only that they shall be delayed, 240 instalments being finally payable notwithstanding, we will not determine, as the point was not considered in the court below and is not necessarily involved in this demurrer. The concluding part of paragraph 11, "Any premiums paid after receipt of due proof *or* total permanent disability and within six months, shall be refunded," seems to say that, if by mistake or out of abundant caution the insured continues to pay premiums after he becomes totally and permanently disabled, he shall have them back for six months. This is a clear recognition that he will not owe premiums after such disability.

We are therefore of opinion that should this administratrix be able to establish that total permanent disability existed before the expiration of the grace period on March 31, 1934, there was no lapse of the insurance though proofs of it were not at once made. If such disability occurred before March 1, 1934, the premium payable at that date, being an advance premium, would not be owing at all. If disability occurred after March 1st and before March 31st, the premium would be owing, and by the provisions of the policy would be paid out of the instalments. The administratrix would not in any case be entitled to recover the instalments accruing before

death and in addition the full face of the policy as she seeks to do. What should be done about disability installments accruing more than six months before the proofs were filed we leave open for consideration in the District Court should the necessity therefor arise. The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.